# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| STINGRAY IP SOLUTIONS, LLC, | The Honorable Rodney Gilstrap |
| Plaintiff, | |
| | Case No.:  2:21-cv-00201-JRG |
| v. | (Lead Case) |
| | Case No.:  2:21-cv-00202-JRG |
| LEGRAND, LEGRAND FRANCE, | (Lead Case) |
| BTICINO SPA, AND LEGRAND SNC, | |
| Defendants. | |
| STINGRAY IP SOLUTIONS, LLC, | |
| Plaintiff, | |
| | Case No.:  2:21-cv-00193-JRG |
| v. | (Member Case) |
| | Case No.:  2:21-cv-00194-JRG |
| AMAZON.COM, INC. and AMAZON.COM | (Member Case) |
| SERVICES LLC, | |
| Defendants. | |

**MOTION OF DEFENDANTS AMAZON.COM, INC. AND AMAZON.COM SERVICES,
LLC TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................1

    I.      STINGRAY AND ITS VENUE MANIPULATION ..............................................1

    II.     THE ACCUSED AMAZON TECHNOLOGY .......................................................4

ARGUMENT .......................................................................................................................5

    I.      THIS CASE BELONGS IN THE NORTHERN DISTRICT OF CALIFORNIA...6

        A.     This case could, and should, have been filed in California. ........................6

        B.     The private interest factors favor transfer. ................................................7

             1.     The vast majority of relevant documents are in the Northern District of California where the accused Amazon (and eero) products are designed and developed. ............................................7

             2.     The availability of compulsory process to secure witness attendance favors transfer because numerous prior art witnesses are based in Northern California.......................................9

             3.     The convenience to potential witnesses strongly favors transfer to California where nearly all relevant witnesses reside...............10

             4.     Judicial economy and the interests of justice weigh heavily in favor of transfer.............................................................................12

        C.     The public interest factors also favor transfer...........................................13

             1.     The Northern District of California has a far greater interest in adjudicating this case. ..................................................................13

             2.     The remaining factors are neutral. ................................................14

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Affinity Labs of Tex. v. Samsung Elecs. Co.*,
    968 F. Supp. 2d 852 (E.D. Tex. 2013)..............................................................................11

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*,
    No. 4:13-CV- 705, 2014 WL 11515020 (E.D. Tex. Nov. 7, 2014) ..................................7

*Auto. Body Parts Ass'n v.* Ford *Glob. Techs., LLC*,
    No. 4:13-cv-705-ALM, 2015 WL 123852 (E.D. Tex. Jan. 7, 2015) .............................5, 7

*DataQuill, Ltd. v. Apple Inc.*,
    No. A-13-CA-706-SS, 2014 WL 2722201 (W.D. Tex. June 13, 2014) ...........................7

*Glob. Commodities* Trading *Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
    972 F.3d 1101 (9th Cir. 2020) .........................................................................................6

*Glob. Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*,
    No. 2:15-cv-01702-RWS-RSP, 2017 WL 1109865 (E.D. Tex. Mar. 24,
    2017) ...............................................................................................................................6

*In re* Genentech,
    566 F.3d 1338 (Fed. Cir. 2009)....................................................................................7, 9

*In re Hoffman-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009)......................................................................................12

*In re Juniper* Networks,
    14 F.4th 1313 (Fed. Cir. 2021) ......................................................................................14

*In re Microsoft* Corp.,
    630 F.3d 1361 (Fed. Cir. 2011)..........................................................................9, 12, 13

*In re Morgan* Stanley,
    417 F. App'x 947 (Fed. Cir. 2011) .................................................................................14

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009)...............................................................................6, 7, 14

*In re Toyota Motor Corp.*,
    747 F.3d 1338 (Fed. Cir. 2014).......................................................................................9

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)................................................................................11, 14

*In re* Volkswagen *AG*,
    371 F.3d 201 (5th Cir. 2004) .............................................................5, 7, 11, 14

*In re* Volkswagen *of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .............................................................7, 9, 13, 14

*In re* Zimmer *Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010)........................................................................8

*Lifestyle Sols., Inc. v. Abbyson Living LLC*,
    No. 2:16-cv-01290-JRG-RSP, 2017 WL 5257006 (E.D. Tex. Nov. 10,
    2017) ..............................................................................................................12

*Optimum* Power *Sols. LLC v. Apple, Inc.*,
    794 F. Supp. 2d 696 (E.D. Tex. 2011)..........................................................11

*Orinda Intell. Props. USA Holding Grp., Inc. v. Sony Corp.*,
    No. 2:08-cv-323, 2009 WL 3261932 (E.D. Tex. Sept. 29, 2009)....................15

*Regents of the* Univ. *of Cal. v. Eli Lilly & Co.*,
    119 F.3d 1559 (Fed. Cir. 1997).....................................................................12

*Samsung* Elecs. *Co. v. Rambus Inc.*,
    386 F. Supp. 2d 708 (E.D. Va. 2005) .......................................................12, 13

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988)........................................................................................12

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    137 S. Ct. 1514 (2017) ...................................................................................3

## STATUTES

28 U.S.C. § 1400(b) .........................................................................1, 3, 6, 13

28 U.S.C. § 1404(a) ...............................................................................5, 11

35 U.S.C. § 299(b) ..........................................................................................3

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(3)....................................................................................3

Fed. R. Civ. P. 45(c)(1)(A) ..............................................................................9

Patent Local Rule 3-1......................................................................................4

## INTRODUCTION

Stingray seeks to circumvent the patent venue statute, 28 U.S.C. § 1400(b).  It filed this lawsuit originally against Amazon and three other defendants—Ring, eero, and Blink—who had no connection to or presence in the Eastern District of Texas.  When those defendants moved to dismiss the claims against them for improper venue, Stingray could not even muster an opposition.  It instead dismissed its claims against those defendants in the hope of keeping its claims against Amazon alive in this district.  But despite dismissing these defendants from the case, Stingray still alleges infringement by more than *fifty* products of Ring, Blink and eero, and is actively seeking discovery from them through improper third-party subpoenas.  In doing so, it seeks to litigate claims on third-party products in the absence of the parties best positioned to defend the claims— all so it could preserve its chosen venue.  The Court should reject Stingray's transparent forum shopping and transfer this case to California, where the accused Amazon technology is designed and developed and where Stingray's representatives and parent company are based.

## FACTUAL BACKGROUND

### I.  STINGRAY AND ITS VENUE MANIPULATION

Plaintiff Stingray IP Solutions, LLC ("Stingray") claims to be based in Frisco, Texas.  (Dkt. 1 ("Compl.") ¶ 1.)  But its business address in Frisco, Texas is a hoteling space operated by the Regus Group.  (*See* Ranganath Decl., Ex. 1 (D&B Report), Ex. 2 (Regus Webpage).)  It does not make or sell any products, let alone make beneficial use of the alleged technology claimed in its patents.  Stingray's only business appears to be patent assertion:  it was founded in April 2020 and began filing lawsuits in this district just a few months later.  (*Id.*, Ex. 1 (D&B Report), Ex. 3 (Pacer Report).)  Stingray is a shell company owned indirectly by Acacia Research Corporation ("Acacia"), a publicly-traded intellectual property licensing company based in Irvine, California.[1]

---

[1] Stingray is a subsidiary of Acacia Research Group LLC, which is a wholly-owned subsidiary of Acacia Research Corporation.  (Dkt. 3.)

(*Id.*, Ex. 4 (D&B Report.)  Stingray's representatives are all Acacia employees, all but one based in California.  Stingray's Chief Executive Officer, Marc Booth—Acacia's Chief IP Officer—is based in Newport Beach, California.  (*Id.*, Ex. 5 (Initial Disclosures), Ex. 6 (LinkedIn Profile).)  Though Stingray identified Austin, Texas-based Craig Yudell, a Vice President of Licensing & Litigation at Acacia, as its President in this case, in another court filing just a few months ago it identified Eric Lucas, a Senior Vice President of Licensing and Litigation for Acacia based in California, as its President.  (*Id.*, Ex. 5 (Initial Disclosures), Ex. 7 (Eric Lucas declaration).)  Another potential Stingray witness, Erik Ahroon, Vice President of Acacia Research Group, is located in San Clemente, California.  (*Id.*, Ex. 5 (Initial Disclosures), Ex. 8 (SmartLinx Report).)

Stingray filed its complaints in these cases on June 1, 2021.  (Case No. 21-cv-193-JRG (the "193 Case"), Dkt. 1 ("Compl."); Case No. 21-cv-194 (the "194 Case"), Dkt. 1.)[2]  Aside from identifying the hoteling space it rents in Frisco, Texas, Stingray does not allege in its complaints any specific connection between it or its claims and this district.  (*See* Compl.)  Stingray alleges that Amazon has fulfillment centers and sells products to customers in this district, but does not allege that Amazon has any relevant witnesses or documents here.  (Compl. ¶¶ 15-24, 25-30.)

Stingray asserts eight U.S. patents across the two cases:  Nos. 6,958,986, 6,961,310, 6,980,537, 7,027,426, 7,082,117, 7,224,678, 7,440,572, and 7,616,961.  (193 Case, Dkt. 1; 194 Case, Dkt. 1).  The patents are generally related to wireless communications, and were each originally assigned to Harris Corporation, a defense contractor headquartered in Melbourne, Florida.  (Ranganath Decl., Ex. 9 (Patents).)  All but one of the patent inventors are based in Florida.  (*Id.*, Ex. 5 (Initial Disclosures).)  Yu-Jih Liu, named inventor of the '537 patent, is based in New Jersey.  (*Id.*, Ex. 5 (Initial Disclosures).)

---

[2] Stingray's allegations with respect to venue are identical in the two complaints.  Thus, unless otherwise specified, all citations to the complaint are to the 193 Case.

In the complaints, Stingray alleges that Amazon.com, Inc., Amazon.com Services LLC (collectively, "Amazon"), Ring LLC ("Ring"), eero LLC ("eero"), and Immedia Semiconductor ("Blink") infringe through their manufacture and sale of devices that comply with various wireless communication standards, including the 802.11, Zigbee, and Z-Wave standards.  (193 Case, Dkt. 1; 194 Case, Dkt. 1.)  Though Ring, Blink, and eero are each indirect subsidiaries of Amazon, they operate independently and each design and develop distinct products and services.  (193 Case, Dkt. 19, Exs. 1-6 (company profiles and articles on companies); 194 Case, Dkt. 19, Exs. 1-6) (company profiles and articles on companies).)  None is based in or has offices in the Eastern District of Texas; each maintains its own separate headquarters outside of the state of Texas.  eero is based in San Francisco, California, Ring is based in Santa Monica, California, and Blink is based in Andover, Massachusetts.  (*Id*.)  Indeed, in a related matter in the Western District of Texas, an eero representative testified that:  (1) "eero's product development, engineering, and sales & marketing functions are managed and run by teams in eero's San Francisco headquarters"; (2) "[n]o eero product engineering teams are present in Texas"; (3) "[d]ocuments related to eero's products are maintained in eero's San Francisco headquarters"; and (4) eero did not own or lease any facilities in the state of Texas.  (Ranganath Decl., Ex. 10, ¶¶ 10, 11, 16, 12  (eero Declaration).)

Given their lack of any connection to this district or the state of Texas, Ring, Blink, and eero moved to dismiss Stingray's complaints for, among other things, improper venue under Fed. R. Civ. P. 12(b)(3).[3]  (*See* 193 Case, Dkt. 19 (Motion to Dismiss)); 35 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1520-21 (2017).  In response, Stingray did not contend that venue was proper over Ring, Blink, and eero, because it could not.

---

[3] Ring, Blink, and eero moved alternatively to dismiss the complaints for improper joinder under Section 299.  (*See* 193 Case, Dkt. 19 (Motion to Dismiss)); 35 U.S.C. § 299(b) ("accused infringers may not be joined in one action as defendants . . . based solely on allegations that they each have infringed the [same] patent or patents in suit.").

(*See* 193 Case, Dkt. 33 (Resp. to Motion to Dismiss).)  Instead, it voluntarily dismissed its claims against these defendants.  (*See* 193 Case, Dkt. 31 (Voluntary Dismissal).)  Stingray's notice of dismissal revealed its true intent:  to moot the motion to dismiss so that it could continue its case against Amazon in this district.  (193 Case, Dkt 33 at 1 ("As a result of the dismissal of the Dismissed Defendants, Defendants' Motion is moot and, on that basis, should be denied. The above-referenced actions will continue with respect to Amazon.com, Inc. and Amazon.com Services LLC as the remaining defendants.").)  Despite dismissing its claims against Ring, Blink, and eero, Stingray did not amend its complaint or withdraw any allegations directed toward these parties, making clear that it continued to allege infringement by Ring, Blink, and eero *products*.

Stingray later served its preliminary infringement contentions under P.R. 3-1.  (Ranganath Decl., Ex. 11.)  In those contentions, Stingray accuses 97 different accused products—including 8 eero mesh networking devices, 6 Blink security cameras, and 42 Ring security products.  (*Id.*, Ex. 11, Appendix A.)  Stingray recently served subpoenas for depositions and documents on Ring, Blink, and eero, seeking extensive discovery on 19 categories of documents and 22 deposition topics. (*Id.*, Exs. 12-14 (Ring, Blink, and eero Subpoenas).)

## II.    THE ACCUSED AMAZON TECHNOLOGY

In addition to products of non-parties Ring, Blink, and eero, Stingray accuses Amazon's Echo smart speaker products and smart home devices compatible with them, based on their wireless communications according to the 802.11 WiFi and Zigbee standards.[4]  (*Id.*, Ex. 11 (Infringement Contentions).)  Amazon is a Delaware corporation headquartered in Seattle, Washington, but has a substantial presence in the Northern District of California.  (Venkatraman Decl. ¶ 3.)  Amazon's Bay Area-based subsidiary Lab126 designs and develops Amazon's

---

[4] Stingray also accuses certain Fire TV products based on their compliance with 802.11 WiFi standards.  (Ranganath Decl., Ex. 11 (Infringement Contentions).)

consumer electronics products.   (*Id.* ¶ 2.)   The Lab126 engineers responsible for the technical design and development of Amazon's Echo products are based primarily in Sunnyvale, California. (*Id.* ¶ 3.)   Technical documents and source code related to these products, including specifically the wireless communications features of these devices, are generated by these engineers, and stored and accessed by them, from the offices in which they work—primarily, Sunnyvale.   (*Id.*)   No employees knowledgeable about the wireless communications features of the accused Echo products are based in the Eastern District of Texas, and accordingly no documents or source code relevant to these features are generated or accessed from this district.   (*See id.* ¶¶ 3-4.)

A small number of Austin, Texas-based Lab126 employees—one manager and six engineers—work on wireless communications features of the accused Echo products.   (*Id.* ¶ 4.) These employees report directly to managers in Sunnyvale, California, and have no unique technical knowledge that engineers based in the San Francisco Bay Area do not have.   (*Id.*)

## ARGUMENT

Under 28 U.S.C. § 1404(a), a court may transfer a civil action to any judicial district where it could have been brought originally for the "convenience of parties and witnesses" and "in the interest of justice."   The threshold inquiry in a transfer analysis is "'whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed.'" *Auto. Body Parts Ass'n v. Ford Glob. Techs.*, *LLC*, No. 4:13-cv-705-ALM, 2015 WL 123852, at *1 (E.D. Tex. Jan. 7, 2015) (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*")).   Once that threshold inquiry is met, the determination of convenience turns on several public and private interest factors, no one of which is dispositive.   *Id.*   "The Fifth Circuit forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer for the convenience of the parties."   *In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009).   That is particularly true where, as here, the dispute has no connection to the plaintiff's chosen forum.

5

*See Glob. Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*, No. 2:15-cv-01702-RWS-RSP, 2017 WL 1109865, at *2-3 (E.D. Tex. Mar. 24, 2017) (transferring case where plaintiff had no connection to forum and witnesses and evidence were located elsewhere).

Here, both the private and public interest factors strongly favor transfer:  the likely witnesses in this case are in California, not Texas, and allowing this case to proceed here would reward Stingray's transparent forum shopping.

## I.      THIS CASE BELONGS IN THE NORTHERN DISTRICT OF CALIFORNIA.

### A.      This case could, and should, have been filed in California.

Stingray could have filed this case in the Northern District of California.  Though based in Washington, Amazon has a significant presence in the San Francisco Bay Area.  This includes offices in Sunnyvale, California, where Amazon designs and develops the accused products in this case, among many other consumer electronics products.  (*See* Venkatraman Decl. ¶¶ 2-3.)  Thus, venue over Amazon would be proper in the Northern District of California, and that court could properly exercise personal jurisdiction over Amazon.  28 U.S.C. § 1400(b) (patent case may be filed "where the defendant has committed [alleged] acts of infringement and has a regular and established place of business."); *see Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106-07 (9th Cir. 2020); (court may exercise personal jurisdiction over out-of-state defendant where it has minimum contacts with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice, and plaintiff's cause of action derives from activities within the forum).

Because the case could have been filed in the Northern District of California, the Court must consider the convenience of the parties and witnesses, as well as the interests of justice, by balancing private and public interest factors.  *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*").  Both favor transfer of this case to the Northern District of

California.

**B.     The private interest factors favor transfer.**

The relevant private interest factors include:  "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203.  Each factor supports transfer.

**1.     The vast majority of relevant documents are in the Northern District of California where the accused Amazon (and eero) products are designed and developed.**

The relative ease of access to documentary and physical evidence strongly favors transfer to the Northern District of California. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Nintendo*, 589 F.3d at 1199 (citing *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (original alteration omitted)).  "The Fifth Circuit has cautioned this factor remains relevant despite technological advances having made electronic document production commonplace." *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, No. 4:13-CV- 705, 2014 WL 11515020, at *4 (E.D. Tex. Nov. 7, 2014), *report and recommendation adopted*, No. 4:13-CV-705, 2015 WL 123852 (E.D. Tex. Jan. 7, 2015) (quoting *DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *3 (W.D. Tex. June 13, 2014)).

Here, the accused Amazon technology—specifically, the wireless communications features of Amazon's Echo products—is designed and developed primarily in the San Francisco Bay Area, within the Northern District of California.  (Venkatraman Decl. ¶¶ 2-3.)  Thus, the bulk of the relevant technical documents in this case are created, stored, and accessed from Amazon's Bay Area offices.  (*Id.* ¶ 3.)  No Amazon employees in the Eastern District of Texas work on the

7

accused wireless communications features, and thus no technical documents or source code relevant to this case are created in or accessed from this district.  (*See id.* ¶¶ 3-4.)  The relevant financial documents—including sales figures for the accused Amazon products—are maintained by finance and marketing teams based in Seattle, Washington, closer to the Northern District of California than the Eastern District of Texas.  (*Id.* ¶ 5.)

Technical documentation and source code related to the *third-party* products accused in this litigation are also stored in California.  eero is headquartered in San Francisco, where it maintains documents relating to its accused mesh networking products.  (Ranganath Decl., Ex. 10 (eero Declaration) ¶¶ 4, 16.)  Ring has its corporate headquarters in Santa Monica, California, where it presumably maintains documents related to its home security products.  (*See* 193 Case, Dkt. 19, Ex. 1 (Ring company profile).)  Documents related to Ring and eero products are plainly relevant:  they make up the majority of the accused products in this case, and Stingray has served document subpoenas on both entities.  (*Id.*, Ex. 11 (Infringement Contentions), Exs. 12-14 (subpoenas to eero, Ring and Blink).)

Evidence relevant to Stingray is also likely based in California where its operating parent company Acacia and nearly all of its witnesses are based.  (Ranganath Decl., Ex. 4 (Acacia based in Irvine, CA), Ex. 7 (Eric Lucas, Stingray's President, located in Irvine, CA), Ex. 8 (Erik Ahroon, Vice President of Acacia Research Group, located in San Clemente, California).)  But if Stingray transported evidence relevant to this case to its shared office space in this district shortly before commencing its litigation campaign, that does not bear on the transfer analysis;  such a "recent, ephemeral" and litigation-driven presence in a district is irrelevant as a matter of law.[5]  *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (giving no weight to patent

---

[5] If, on the other hand, documents related to the patents are stored in Florida, where the prior assignee Harris and patent inventors are based, the burden of transporting evidence to Texas or California would not be meaningfully different.

prosecution files transferred to a shared office in Texas in anticipation of litigation, finding that plaintiff's "presence in Texas appears to be recent, ephemeral, and an artifact of litigation"); *see also In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (irrelevant that plaintiff incorporated in Texas shortly before filing lawsuit, finding contacts "were recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue"). This factor thus strongly favors transfer.

> **2.     The availability of compulsory process to secure witness attendance favors transfer because numerous prior art witnesses are based in Northern California.**

A court cannot compel non-party witnesses to travel more than 100 miles from their homes or work to provide testimony.  Fed. R. Civ. P. 45(c)(1)(A).  Given this limitation, the lack of availability of compulsory process to secure the attendance of non-party witnesses in this district favors transfer.  *See In re Toyota Motor Corp.*, 747 F.3d 1338, 1340-41 (Fed. Cir. 2014) (directing transfer to district where witnesses were subject to subpoena); *Volkswagen II*, 545 F.3d at 316 (court should transfer to a venue with absolute subpoena power); *see also In re Genentech*, 566 F.3d at 1343 (courts must consider all potential witnesses who have relevant and material information, without attempting to evaluate the importance of their testimony or the likelihood they will testify at trial).

Numerous potential prior art witnesses are based in the Northern District.  For example, Charles Perkins, author of the prior art publication "Ad-hoc On-Demand Distance Vector Routing," is based in the San Francisco Bay Area.  (*Id.*, Ex. 15 (LinkedIn Profile).)  The Perkins article is cited extensively in the prosecution history of the asserted '426 patent.  (*Id.*, Ex. 16 ('426 Prosecution History Excerpts).)   Mr. Perkins authored a seminal publication, "Ad Hoc Networking" related to the technology underlying several of the asserted patents.  (*Id.*, Ex. 17.)  Mr. Perkins was a contributor to various wireless networking standards as a member of the

IETF and IEEE. (*Id.*, Ex. 18.) Mr. Perkins is a preeminent scholar in the field of wireless technologies, and his testimony, as evidenced by his multiple citations in the prosecution history, would establish that the asserted patents claim no improvement over existing and conventional wireless technology. (*Id.*, Ex. 16.) Mr. Perkins is outside the subpoena power of this Court, but could be compelled to testify in the Northern District of California.

Similarly, Johnny Chen, author of the prior art publication "New Approaches to Routing for Large-Scale Data Networks" is based in the San Francisco Bay Area. (*Id.*, Ex. 19.) Amazon asserts obviousness of the asserted '310 patent over Mr. Chen's Ph.D. thesis. (*Id.*, Ex. 20 (Invalidity Charts).) Mr. Chen's prior art thesis is written in survey form and serves both as a prior art reference and evidence of the state of the art of source and multipath routing in wireless networks as of the date of the '310 patent. Mr. Chen could be compelled to testify in the Northern District of California but is outside this Court's subpoena power.

To the extent Stingray pursues claims against eero, eero witnesses may be required to testify at trial. Indeed, Stingray acknowledged the relevance of eero witnesses when it served a deposition subpoena on eero. (Ranganath Decl., Ex. 12 (eero Subpoena).) eero is based in San Francisco, as are its relevant engineers. (*Id.*, Ex. 10, ¶¶ 4, 10 (eero Declaration).) This Court could not compel the attendance at trial of current or former eero witnesses based in the Bay Area.

In contrast, in its complaint Stingray does not identify *any* third-party witnesses in this district that may testify at trial and whose testimony could be compelled here. Nor is Amazon aware of any. This factor thus favors transfer to the Northern District of California.

### 3. The convenience to potential witnesses strongly favors transfer to California where nearly all relevant witnesses reside.

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05; *Affinity*

*Labs of Tex. v. Samsung Elecs. Co.*, 968 F. Supp. 2d 852, 858 (E.D. Tex. 2013) (granting transfer to the Northern District of California and finding the cost of attendance for witnesses "favors transfer.").

Here, the likely witnesses are almost all in the Northern District of California or the state of California.  The Amazon witnesses most knowledgeable about the accused technology are the engineers that design and develop Amazon's Echo products.   These employees are almost exclusively based in Amazon's Sunnyvale, California offices, over 1,500 miles away from this district.   (Venkatraman Decl. ¶¶ 2-3; Ranganath Decl., Ex. 21 (Google Maps.))   For these employees, travel from the San Francisco area to Marshall, Texas would be far more time consuming and inconvenient than the short car ride to any of the Northern District courthouses in San Jose, Oakland, or San Francisco.  (Ranganath Decl., Exs. 21, 25 (Google Flight Searches) (Google Maps.)  And travel to Marshall would be particularly inconvenient because there are no direct flights to Marshall from any airport in the San Francisco Bay Area.  (*Id.*, Ex. 25 (Google Flight Searches)); *Optimum Power Sols. LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 701 (E.D. Tex. 2011) ("The existence or non-existence of direct flights can impact the analysis of travel time."). Indeed, these witnesses would not be able to complete their travel within a single day, which would mean a minimum of three days away from family and work.  "[A]dditional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (quoting *Volkswagen I*, 371 F.3d at 205) (alterations in original).

Travel to Northern California for trial would *also* be substantially more convenient than travel to Marshall, Texas for Stingray's witnesses, who are predominantly based in Southern California.  (Ranganath Decl., Ex. 7 (Eric Lucas, Stingray's President, located in Irvine, CA), Ex.

8 (Erik Ahroon, Vice President of Acacia Research Group, located in San Clemente, California),
Exs. 22-23 (Google Flight Searches).)

Trial in California would also be significantly more convenient for representatives of eero
and Ring, based in San Francisco and Santa Monica, California, respectively.  (*Id.*, Ex. 10 (eero
Declaration), Ex. 22-23 (Google Flight results showing flights from LAX to SFO and Marshall).)
And for third party Blink, based in Andover, Massachusetts, travel to the San Francisco Bay area
via a non-stop flight would be considerably more convenient than travel to Marshall, Texas.  (*Id.*,
Ex. 24 (Google Flight results showing flights from Boston to SFO and Marshall).)

Finally, trial in the Northern District of California would be significantly more convenient
for the numerous prior art witnesses identified above, all of whom are based in the San Francisco
Bay Area.  The convenience of witnesses factor strongly favors transfer.

### 4.    Judicial economy and the interests of justice weigh heavily in favor of transfer.

"The 'consideration of the interest of justice, which includes judicial economy, may be
determinative to a particular transfer motion, even if the convenience of the parties and witnesses
might call for a different result.'"  *Lifestyle Sols., Inc. v. Abbyson Living LLC*, No. 2:16-cv-01290-
JRG-RSP, 2017 WL 5257006, at *4 (E.D. Tex. Nov. 10, 2017) (quoting *Regents of the Univ. of
Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997)).  In evaluating this factor, courts
must strongly consider whether a plaintiff has "manipulate[d] the propriety of venue."  *In re
Microsoft Corp.*, 630 F.3d at 1364 (citing *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1337 (Fed.
Cir. 2009)); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988) (courts should consider
"factors of systemic integrity and fairness" in deciding transfer requests); *Samsung Elecs. Co. v.
Rambus Inc.*, 386 F. Supp. 2d 708, 721 (E.D. Va. 2005)  ("Systemic integrity . . . take[s] account
of a party's attempt to game the federal courts . . . [and] circumvent[ion] [of] the force and effect
of adverse rulings in prior litigation.").

12

Here, Stingray's forum shopping is obvious and contrary to the interests of justice. Stingray sued Ring, Blink, and eero in this district even though those defendants had no presence at all in this district, let alone a regular and established place of business as required under § 1400(b).  (*See* 193 Case, Dkt. 19 (Motion to Dismiss).)  When Ring, eero, and Blink motion to dismiss exposed this flaw in the case, Stingray voluntarily dismissed its claims against those parties solely to preserve venue in East Texas for its remaining claims against Amazon.  (193 Case, Dkt. 31 (Voluntary Dismissal).)  Yet, Stingray continues to pursue claims against Ring, Blink, and eero *products*, even serving far-reaching and intrusive subpoenas for documents and deposition testimony.  (*Id.*, Exs. 12-14 (Ring, Blink, and eero Subpoenas.)  Stingray wants the benefit of discovery from these parties so that it can litigate its claims in the absence of those best positioned to defend against the claims, completely disregarding the patent venue statute.  This blatant forum shopping weighs heavily in favor of transfer.  *See In re Microsoft Corp.*, 630 F.3d at 1364; *Samsung Elecs. Co.*, 386 F. Supp. 2d at 721.

### C. The public interest factors also favor transfer.

The relevant public interest factors include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws." *Volkswagen II*, 545 F.3d at 315.  The Northern District of California has a far greater interest in adjudicating this case; the remaining public factors are neutral.

### 1. The Northern District of California has a far greater interest in adjudicating this case.

The Northern District of California has a local interest in this dispute because Stingray's claims implicate the hard work of Amazon's Bay Area-based engineers that designed and developed the accused products. *In re TS Tech USA Corp.*, 551 F.3d at 1321 (finding localized

13

interest in the transfer venue under *Volkswagen I* and *Volkswagen II* where "[n]one of the companies have an office in the Eastern District of Texas; no identified witnesses reside in the Eastern District of Texas; and no evidence is located within the venue. Instead, the vast majority of identified witnesses, evidence, and events leading to this case involve [the transfer state]. . .").

The Northern District of California also has a strong interest in adjudicating Stingray's claims for infringement by eero products that are designed and developed in the San Francisco area. (Ranganath Decl., Ex. 13 (eero Declaration).)

In contrast, the Eastern District of Texas has no interest at all in this case. Stingray certainly identifies no such interest in its complaint. Its only allegations related to venue concern Amazon's fulfillment centers in this district and sale of products to East Texas residents. (Compl. ¶¶ 15-24, 25-30.) But such generalized contacts with a judicial district do not constitute a local interest in a dispute. *Volkswagen II*, 545 F.3d at 317-18 (courts must disregard interests that "could apply virtually to any judicial district or division in the United States," and should instead focus on particularized local interests); *see also In re Nintendo*, 589 F.3d at 1198. The local interest factor thus favors transfer to the Northern District of California.

## 2.   The remaining factors are neutral.

Although statistics may show time to trial is faster in this district than in the Northern District of California, speed to trial is less important where, as here, the plaintiff is a patent assertion entity that "does not make or sell any product that practices the claimed invention." *In re Morgan Stanley*, 417 F. App'x 947, 950 (Fed. Cir. 2011). Moreover, the fact that this Court sets more aggressive case schedules than the Northern District of California does not weigh against transfer, particularly because the other factors so overwhelmingly support transfer. *See, e.g.*, *In re Juniper Networks*, 14 F.4th 1313, 1322 (Fed. Cir. 2021) ("it is improper to assess the court congestion factor based on the fact that the Western District of Texas has employed an aggressive

scheduling order").

Finally, both this Court and the Northern District of California are equally familiar with federal law governing patent cases and capable of adjudicating the issues here.  Moreover, this case implicates no conflicts of law.  The final two public interest factors are therefore neutral.  *See Orinda Intell. Props. USA Holding Grp., Inc. v. Sony Corp.*, No. 2:08-cv-323, 2009 WL 3261932, at \*4 (E.D. Tex. Sept. 29, 2009).

## CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court grant Amazon's motion and transfer this action to the Northern District of California.

January 14, 2022                                   Respectfully submitted,

                                                   By:   *Ravi R. Ranganath*
                                                         J. David Hadden
                                                         CA Bar No. 176148 (Admitted E.D. Tex.)
                                                         Email: dhadden@fenwick.com
*Of Counsel:*                                            Saina S. Shamilov
                                                         CA Bar No. 215636 (Admitted E.D. Tex.)
      Deron R. Dacus                                     Email: sshamilov@fenwick.com
      (Texas State Bar No. 00790553)                     Ravi R. Ranganath
      Email:  ddacus@dacusfirm.com                       CA Bar No. 272981 (Admitted E.D. Tex.)
      **THE DACUS FIRM, P.C.**                           Email: rranganath@fenwick.com
      821 ESE Loop 323. Suite 430                        **FENWICK & WEST LLP**
      Tyler, TX  75701                                   801 California Street
      Telephone:  903.705.1117                           Mountain View, CA 94041
      Facsimile:  903.581.2543                           Telephone: (650) 988-8500
                                                         Facsimile: (650) 938-5200

                                                         Geoffrey R. Miller
                                                         (Texas State Bar No. 24094847)
                                                         Email:  gmiller@fenwick.com
                                                         **FENWICK & WEST LLP**
                                                         902 Broadway, Suite 14
                                                         New York, NY  10010
                                                         Telephone:  212.430.2600
                                                         Facsimile:  650.938.5200

                                                         *Counsel for Defendants*
                                                         AMAZON.COM, INC., AND
                                                         AMAZON.COM SERVICES LLC,

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) and that a true and correct copy of the foregoing document and accompanying Sealed Exhibit was served via electronic mail on January 14, 2022.

/s/ *Ravi R. Ranganath*
Ravi R. Ranganath

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendant has complied with L.R. CV-7(h) regarding this opposed motion.  On January 14, 2022, counsel for Defendants explained its position and the basis for its requested transfer in a telephone call with Plaintiff.  Counsel for Amazon included Geoff Miller and Andrew Lewis at Fenwick & West LLP.  Counsel present for Plaintiff included Terry Saad and Marcus Benavides at Bragalone Olejko Saad PC.  On that call, counsel for Plaintiff confirmed that it opposes the relief requested by this motion.  The discussions have ended in an impasse, leaving an open question for the court to resolve.

*/s/ Geoff Miller*
Geoff Miller

18